IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 91-2408
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CINDY GABBARD ADAMS, a/k/a Cindy Sanchez,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

( May 8, 1992)

Before KING, JOHNSON and DAVIS, Circuit Judges.

PER CURIAM:

After a guilty plea, the district court convicted defendant Cindy Gabbard Adams of misprision of a felony in violation of 18 U.S.C. § 4 and sentenced the defendant to a term of imprisonment. On appeal, Adams complains that the record contains an inadequate factual basis for her guilty plea. Although we agree that the district court did not establish a factual basis for Adams's plea in full compliance with Rule 11(f), we find this failure to be harmless error. Accordingly, we affirm.

I.   FACTS AND PROCEDURAL HISTORY

During the 1970s, Ramon Dionicio Martinez, also known as "Jose Luis Sanchez" and "El Lechero," formed an illegal narcotics distribution ring in the Rio Grande Valley. Martinez and his

fellow conspirators imported huge quantities of marijuana from Mexico and distributed the marijuana to dealers across the United States. From the sale of these illegal drugs, Martinez derived a large income. He invested much of this income in real estate, frequently using sham or fraudulent transactions to conceal his involvement. In December 1986 Martinez purchased a residence in Edinburg, Texas, with proceeds derived from the sale of illegal narcotics. Eventually, he transferred the title in the house to his girlfriend, the defendant Cindy Gabbard Adams.

On May 30, 1990, the Government named Martinez and thirty other defendants in a ninety-one count indictment charging them with participation in an illegal narcotics distribution and racketeering enterprise. Although Adams had not been directly involved in the distribution ring, she was named in six counts of the indictment. Adams maintained a plea of "not guilty" to these charges until December 4, 1990. On that date, the Government filed a superseding information charging Adams with one count of misprision of a felony.[1] Specifically, the Government alleged that Adams knew that Martinez had used laundered money to purchase the Edinburg residence and had failed to report this illegal purchase to the authorities. In exchange for the Government's promise to

---

[1]See 18 U.S.C. § 4 (1988), which provides:

    Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined not more than $500 or imprisoned not more than three years, or both.

dismiss the indictment against her, Adams agreed to relinquish her interest in the Edinburg house and to enter a guilty plea to the charge in the superseding information.

At her rearraignment, the district court reviewed the terms of the superseding information with Adams, who related that she understood the terms of the charge. Adams entered a plea of guilty to the misprision charge alleged in the superseding information, and the district court accepted the plea. On April 9, 1991, after the court received the recommendation of the probation office in its presentence report, the court sentenced Adams to three years in prison, but ordered her to serve only the first six months of the sentence, the remainder suspended for five years.[2] Adams filed a timely notice of appeal.

## II. DISCUSSION

A guilty plea is insufficient in itself to support a criminal conviction. When a defendant enters a guilty plea, Federal Rule of Criminal Procedure 11(f) requires "a factual basis for the plea." Fed. R. Crim. P. 11(f). The sentencing court must satisfy itself, through an inquiry of the defendant or examination of the relevant materials in the record, that an adequate factual basis exists for the elements of the offense. United States v. Montoya-Camacho, 644 F.2d 480, 485 (5th Cir. 1981). The factual basis cannot be implied from the fact that the defendant entered a plea, but must appear on the face of the record and "must be precise enough and

---

[2]Because the charged offense was alleged to have occurred before the effective date of the federal sentencing guidelines, the guidelines did not apply.

sufficiently specific" to demonstrate that the accused committed the charged criminal offense.  United States v. Johnson, 546 F.2d 1225, 1226 (5th Cir. 1977).

The record must reveal specific factual allegations supporting each element of the offense.  United States v. Fountain, 777 F.2d 351, 356 (7th Cir. 1985), cert. denied, 475 U.S. 1029 (1986).  To support a conviction for misprision of a felony, therefore, the record must reveal specific factual allegations regarding the following three elements:  (1) the defendant had knowledge that a felony was committed; (2) the defendant failed to notify authorities of the felony; and (3) the defendant took an affirmative step to conceal the felony.  18 U.S.C. § 4 (1988).  See United States v. Davila, 698 F.2d 715, 717 (5th Cir. 1983).

A.    Factual Basis.

Adams contends that there are no facts in the record establishing the third element of her alleged offense--an affirmative act of concealment.  The misprision statute is directed against an individual who "conceals and does not as soon as possible make known...."  18 U.S.C. § 4 (1988) (emphasis added).  Thus, under the misprision statute, the defendant must commit an affirmative act to prevent discovery of the earlier felony.  "[M]ere failure to make known does not suffice."  United States v. Warters, 885 F.2d 1266, 1275 (5th Cir. 1989).  See also Johnson, 546 F.2d at 1227.

The acceptance of a guilty plea is deemed a factual finding that there is an adequate factual basis for the plea.  Davila, 698 F.2d at 717.  We review this finding under the clearly erroneous

4

standard.  Id.  To determine whether the district court erred in concluding that there was an adequate factual basis for the plea, we must examine two parts of the record:  the information and the plea hearing.[3]

The Information.  Defendant Adams waived grand jury indictment and entered a guilty plea to an information charging her with misprision of a felony.  In its entirety, the superseding information states:

> The United States Attorney Charges:
>
> That starting in December of 1986 to about February of 1987 in the Southern District of Texas and elsewhere and in the jurisdiction of this court
>
> CINDY GABBARD ADAMS
>
> having knowledge of the commission of a felony by Ramon Dionicio Martinez, to wit:  a violation of the money laundering statute, 18 USC 1956 (the Peter Street house purchase), did knowingly and unlawfully conceal and    cover up the same and did not as soon as possible  report the same to a judge or other person in civil or  military authority under the United States.

Record Vol. I, at 438.  The Government suggests that this superseding information is adequate to provide a factual basis for the guilty plea.

If sufficiently specific, an indictment or information can be used as the sole source of the factual basis for a guilty plea. United States v. Bachynsky, 949 F.2d 722, 730 (5th Cir. 1991);

---

[3]In some cases it might also be permissible for the district court to turn to the Presentence Report to establish an adequate factual basis, as long as the court indicates on the record that it relies upon the Presentence Report.  See United States v. Graves, 720 F.2d 821, 824 (5th Cir. 1983).  The district court in this case did not indicate on the record that it relied upon the Presentence Report.  See Section B.

United States v. Boatright, 588 F.2d 471, 475 (5th Cir. 1979). The superseding information in this case, however, is not sufficiently specific. While it states that Adams concealed Ramon Martinez's violation of the money laundering statute, the information fails to allege any <u>facts</u> which would indicate that Adams took an affirmative step to conceal the crime. <u>Cf.</u> <u>Boatright</u>, 588 F.2d at 475 (concluding that an indictment is not adequate to serve as the factual basis for a plea of guilty to a conspiracy charge when the indictment "fails to allege any facts tying [the defendant] to the conspiracy.").

<u>The Plea Hearing.</u> At rearraignment, the district court engaged in the following colloquy:

ATTORNEY FOR THE GOVERNMENT: Your Honor, as to Cindy Gabbard Adams, she was the mistress or girlfriend of large scale drug dealer Ramon Martinez over a period of several years. As Mr. Martinez generated huge sums of money from his drug dealing, he invested some of this money in assets that he placed in names other than his own, and for purposes of this factual allocution, in real estate. Mr. Martinez was involved in getting money from drug dealing, buying assets and putting those assets in names other than his own to hide his own ownership, control, participation of the assets. In particular, in the Peter Street address or the Peter Street asset which is one of the assets we're seeking forfeiture of in the indictment.

He, Ramon Martinez, and Ms. Adams attended a real estate auction, a private auction, in December of 1986, and at that auction Ramon Martinez paid down a down payment of about 10 percent of the purchase of the Peter Street house, total purchase price of the house was approximately $40,000 and around $4,000 paid down. Thereafter, in approximately February of 1987, a check from the Robert Salinas law firm, funded by Ramon Martinez, was used to pay off the balance of that property. That property in February of '87 was then deeded to Ramon Martinez' brother's name, Juan Martinez, and that is the money laundering violation that is made out by Ms. Adams' misprison [sic] of that felony.

Further down the line, this property gets transferred to Ms. Adams. In fact, I believe title to date rests in her

6

name, but the crime here is not that which it occurred at a later date, but rather the initial purchase by Ramon Martinez with drug money putting it into someone else's name to hide his own ownership of it.

THE COURT: All right. Ms. Adams, you've just heard what Mr. Lewis has explained to me. Is all of that true?

CINDY ADAMS: Yes, sir.

THE COURT: And you were aware of it?

CINDY ADAMS: Yes, sir.

THE COURT: You were aware of all these facts?

CINDY ADAMS: Yes, sir.

ATTORNEY FOR THE GOVERNMENT: And in fact concealed it and did not make it known to anybody.

THE COURT: And you did not, of course, report it to the authorities?

CINDY ADAMS: No, sir.

THE COURT: All right. I'm going to accept your plea of guilty. I find that you are guilty as set out in the information....

Record Vol. IV, at 54-56. The Government suggests that this colloquy provides an adequate factual basis for the guilty plea.

According to the Government, the plea hearing demonstrates that Adams concealed the illegal purchase of the Edinburg house and, therefore, provides a factual basis for the third element of the misprision offense. We are not persuaded. The transcript of the plea hearing does not indicate that Adams admitted an affirmative act of concealment. Rather, it indicates that the prosecutor interjected his position that Adams had concealed Martinez's money laundering violation. The district court did not ask Adams whether she agreed with this interjection. Even assuming that she did agree with the prosecutor, the interjection is

7

insufficient as a matter of law to constitute a factual allegation of affirmative concealment. See Fountain, 777 F.2d at 356. Thus, the record of the plea hearing also does not provide a factual basis for the plea.

We conclude that the information available to the court when it accepted the plea (outlined above from the record) was inadequate as a matter of law to "satisfy it that there [was] a factual basis for the plea," as required by 11(f). We must therefore determine whether the court committed reversible error in accepting her plea.

B.    Harmless Error.

We review a district court's failure to comply with Rule 11 for harmless error under Rule 11(h). The inquiry is whether any variance from the procedures required by Rule 11 affects the substantial rights of the defendant. United States v. Bernal, 861 F.2d 434, 436 (5th Cir. 1988), cert. denied, 493 U.S. 872 (1989); United States v. Corbett, 742 F.2d 173, 178 & n.14 (5th Cir. 1984).[4]  This circuit has identified three "core concerns" under Rule 11:  (1) whether the guilty plea was coerced; (2) whether the defendant understands the nature of the charges; and (3) whether the defendant understands the consequences of the plea. See United States v. Shacklett, 921 F.2d 580, 582 (5th Cir. 1991); Bernal, 861 F.2d at 436. When a district court completely fails to address one of these concerns, the defendant's substantial rights have been

_____

[4] Rule 11(h), adopted in 1983, reads:  "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." See also Corbett, 742 F.2d at 178 n. 14.

8

affected and Rule 11 requires automatic reversal.  <u>Bernal</u>, 861 F.2d at 436; <u>Corbett</u>, 742 F.2d at 178.  If the core concerns are met, however, an "inadequate address" or less than "letter-perfect" compliance with Rule 11[5] may be excused under a harmless error standard.  <u>Bernal</u>, 861 F.2d at 436; <u>see also</u> <u>United States v. Dayton</u>, 604 F.2d 931, 939-40 (5th Cir. 1979) (en banc), <u>cert. denied</u>, 445 U.S. 904 (1980).

We recognize, of course, that the three core concerns are not the sole "substantial rights" that Rule 11 protects.  As this court observed in <u>Shacklett</u>, the mere fact that a Rule 11 violation fails to implicate one of the core concerns does not in itself mean that the violation is harmless.  921 F.2d at 582.  Even then the question remains whether the violation affects the substantial rights of the defendant, <u>id.</u>; <u>see also</u> <u>Dayton</u>, 604 F.2d at 940 (violations of technical requirements of Rule 11 are subject to harmless error analysis, but are not always harmless), and the appellate court must conduct an independent examination of the effect of the error on the rights of the accused.  <u>Shacklett</u>, 921 F.2d at 582.

Many of the cases analyzing a defendant's Rule 11 challenges to the acceptance of a guilty plea do not distinguish the

---

[5] For example, in <u>United States v. Tuangmaneeratmun</u>, 925 F.2d 797, 804 (5th Cir. 1991), the district court failed to explain adequately the effect of a term of supervised release prior to accepting a defendant's guilty plea.  Although this constituted an "inadequate address" of a core concern, we held that it amounted to harmless error because the defendant did not demonstrate that the court's failure affected his substantial rights or otherwise prejudiced him.  <u>Id.</u>

requirements of 11(c)(1) from those of 11(f).[6] This is understandable because the two sections address related concerns. Section (c) is the textual basis for the second core concern and requires the court to

> address the defendant personally in open court and inform him of, and determine that he understands, the following:
>
> (1) the nature of the charge to which the plea is offered. . . .

Fed. R. Crim. P. 11(c). This section requires a court to participate personally in a conversation with the defendant to determine if he understands the nature of the charges against him. Shacklett, 921 F.2d at 582. Often in the course of this questioning, a discussion of the defendant's conduct will occur. The court may then rely upon this colloquy to satisfy itself that a sufficient factual basis exists for accepting the guilty plea.

Section (f), on the other hand, does not specifically require any on-the-record colloquy. It requires that the court subjectively satisfy itself of an adequate factual basis. See United States v. Antone, 753 F.2d 1301, 1305 (5th Cir.) (prosecutor must present evidence to the subjective satisfaction of the district court which indicates that the defendant actually committed the offense to which he is pleading guilty), cert.

---

[6] Many of the decisions which do not distinguish between the requirements of these two sections of Rule 11 were written prior to the adoption of 11(h). Before that section clarified the applicability of the harmless error standard to certain Rule 11 violations, there was less reason to be concerned with distinguishing between a district court's violation of a core concern and other Rule 11 violations. See, e.g., United States v. Boatright, 588 F.2d 471 (5th Cir. 1979); United States v. Johnson, 546 F.2d 1225 (5th Cir. 1977).

denied, 474 U.S. 818 (1985); see also Bachynsky, 949 F.2d at 730 (relying on Antone); United States v. Guichard, 779 F.2d 1139, 1146 (5th Cir. 1985) (same), cert. denied, 475 U.S. 1127 (1986). We observe that courts, looking to the on-the-record colloquy used to satisfy both Rule 11(c)(1) and Rule 11(f), have produced language in several cases which seemingly commingles the requirements of these two sections.[7]

Nonetheless, section (f) (factual basis) and section (c)(1) (understanding the nature of the charges) are distinct requirements of Rule 11. Their similarity does not elevate Rule 11(f) to core concern status, and accordingly, noncompliance with Rule 11(f) does not automatically affect a defendant's substantial rights. In the instant case, after careful review of Adams' arguments, we note that Adams never contends that the court failed to explain the nature of the charges as required by Rule 11(c)(1). Likewise, she makes no argument that the court's failure to establish a factual basis in violation of Rule 11(f) somehow confused or misled her as to the nature of the charges against her, thereby implying a violation of Rule 11(c)(1). Because the court's failure to comply with Rule 11(f) is not a core concern, and is not suggested by

---

[7] See, e.g., Shacklett, which states:

The district court must therefore personally participate in the colloquy mandated by Rule 11 in order to assure itself that the defendant understands what he is admitting and the consequences of his admissions and that his admissions constitute the crime charged.

921 F.2d at 582 (emphasis added).

11

Adams to have somehow raised a core concern, we apply the harmless error standard of Rule 11(h) in reviewing that failure.

The plea hearing record clearly established the first two elements of the misprision offense, knowledge of a felony and failure to notify authorities of the felony. Adams stated on the record that she was aware of and knew to be true the following facts stated by the Assistant United States Attorney: that Martinez bought assets to conceal his drug proceeds, that the house in which she lived was such an asset, and that she did not make this information known to the authorities. Only the third element, affirmative concealment, is at issue.

Although the district court failed to discuss with Adams any specifics with regard to this third element at the time of her plea hearing, we find that other sources of factual information provide us with an adequate factual basis of Adams' affirmative concealment to support her plea. According to Adams' own statements in the Presentence Report,

> Shortly after that I was with him at an auction when he bought the house on Peters Street in Edinburg. At that time I believe the house was bought in the name of his brother, Juan.

> At some later date we moved into the house on Peters Street with Ramon. Eventually the house was transferred into my name. Ramon had the paper work prepared at the law offices of Pena, McDonald in Edinburg, and afterwards I would make payments to Juan, or Ramon would make the payments for me. The payments were always in cash. . . .

The plea hearing record establishes that the house was paid off in February 1987 with a check funded by Martinez and issued by the Robert Salinas law firm. At that time, title to the house was

12

vested in Juan Martinez. Title was later transferred to Adams. We can infer from this that Adams made her payments before the house was "paid off" and while title was vested in Juan. On this record, therefore, the evidence establishes that Adams made cash payments to Juan Martinez to "purchase" an asset which she knew had been purchased by Ramon Martinez in the name of his brother. She also knew that the house was purchased by Ramon Martinez with drug proceeds and was being used to conceal those proceeds. The payments made by Adams constitute an affirmative acts of concealment of the felony underlying the misprision offense.

We take care to point out that the district court could not rely on the information within the Presentence Report as a source of the factual basis for Adams' plea. As this court made clear in United States v. Graves, 720 F.2d 821, 824 (5th Cir. 1983), "when a presentence report is relied upon as a source of the factual basis to establish the crime, this circumstance must appear on the record, and, where necessary to establish the factual basis, the presentence report must be part of the record on appeal." See also Sassoon v. United States, 561 F.2d 1154, 1159 (5th Cir. 1977) ("[T]he factual basis, whatever its source, must appear clearly on the record."). Here, the district court nowhere stated on the record that it was relying on the Presentence Report as the source of the factual basis of Adams' plea. The Presentence Report could not have served, therefore, as a proper factual basis of the element of concealment.

We, on the other hand, despite the district court's violation of Rule 11(f), may consider the information in Adams' Presentence

13

Report in conducting our harmless error analysis. In so doing, we find that Adams did, in fact, take affirmative steps to conceal Ramon's unlawful activities. Accordingly, we conclude, upon examination of the entire record in this case, that the failure of the district court to establish adequately that a factual basis existed for Adams' plea did not affect her substantial rights, because the record as a whole reveals that her actions satisfied the elements of misprision of a felony in violation of 18 U.S.C. § 4.[8] The violation of Rule 11(f) was therefore harmless error.

---

[8] In this regard, the instant case is distinguishable from United States v. Goldberg, 862 F.2d 101 (6th Cir. 1988). In Goldberg, the Sixth Circuit found that the district court's failure to satisfy itself of a factual basis for the defendant's plea to misprision of a felony was not harmless error. Id. at 106. In that case, Goldberg, the defendant doctor, was charged with affirmatively concealing a pharmacist's crime of adding medications to Goldberg's prescriptions in order to defraud Medicaid. The plea colloquy failed to elicit any acts taken by Goldberg to conceal the pharmacist's offense. Based upon the information taken from the colloquy, the Sixth Circuit noted as follows:

> In continuing to write the prescriptions, Dr. Goldberg did nothing more than provide the opportunity for the pharmacist to continue with their [sic] fraudulent conduct, but Dr. Goldberg did not engage in active concealment from the authorities of the fact that after the prescription was written the pharmacist added to the prescriptions. The statement elicited from Dr. Goldberg is insufficient to establish anything more than Dr. Goldberg's failure to report on-going criminal conduct.

Id. at 105. The Sixth Circuit recognized that a district court may look to many sources to determine the existence of a factual basis of the plea, and is not limited to the colloquy. Id. In that case, however, the district court made no inquiry of the Government for supplemental findings, nor did the government offer any. Id. The Goldberg court therefore limited its review to the record of the plea proceeding. Id. Based upon its finding that the plea proceeding provided no factual basis for the element of concealment, the Sixth Circuit found a violation of Rule 11(f), and held it not to be harmless error. Id. at 106 ("[W]hile the exact method of producing a factual basis on the record is subject to a flexible standard of review, the need to have some factual basis

14

AFFIRMED

JOHNSON, Circuit Judge, concurring:

I concur in the panel opinion with the understanding that the harmless error rationale in Rule 11(h) is not a convenient excuse for the district courts to abrogate their responsibility to ascertain that an adequate factual basis exists for the elements of the offense.  The instant case is unusual:  while the Presentence Report provides a factual basis for the plea, it cannot be relied upon as the source of the factual basis.  In most cases the circumstances will not be so unusual.  The purpose of the factual basis requirement in Rule 11(f) is to protect a defendant "who may plead with an understanding of the nature of the charge, but `without realizing that [her] conduct does not actually fall within the definition of the crime charged.'"  United States v. Oberski, 734 F.2d 1030, 1031 (5th Cir. 1984) (quoting United States v. Johnson, 546 F.2d 1225, 1226-27 (5th Cir. 1977)).  If nothing in the record indicates that the defendant realized her conduct fell within the definition of the charged offense, then the absence of

---

will continue to be a rule subject to no exceptions.") (citations omitted).

Unlike Goldberg, where there was apparently no information presented to the Sixth Circuit concerning the defendant doctor's actions but for that offered at the plea proceeding, there was information available in the instant case that clearly indicates that Adams took affirmative steps to conceal Martinez' crime. Goldberg directly raises the issue whether a district court's failure to establish a factual basis at the plea hearing, in the absence of other information sources otherwise available to the court that would support the plea, constitutes harmless error. That question is not presented by the case at bar, and we need not address it at this time.

15

an adequate factual basis cannot be harmless error.  See United States v. Goldberg, 862 F.2d 101, 106 (6th Cir. 1988).